United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Antonio Alcazar, | NO. C 07-04687 JW |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTIONS FOR DEFAULT JUDGMENT** |
| v. | |
| SCME Mortgage Bankers, Inc. et al., | |
| Defendants. / | |

### I. INTRODUCTION

Antonio Alcazar ("Plaintiff") brings this action against SCME Mortgage Bankers, Inc. ("SCME"), Hilltop Financial Mortgage ("Hilltop"), Homecomings Financial, LLC ("Homecomings"), DeeDee Santiago ("Santiago"), and Dolores Sotelo ("Sotelo") (collectively, "Defendants") alleging, *inter alia*, violations of 42 U.S.C. § 3605 (Fair Housing Act), 15 U.S.C. § 1691 (Equal Credit Opportunity Act), and 15 U.S.C. § 1639 (Truth in Lending Act). Plaintiff alleges, *inter alia*, that Defendants misrepresented the terms of a refinancing loan on Plaintiff's Sunnyvale home on account of his race, national origin, or gender.

Presently before the Court are Plaintiff's Motions for Entry of Default Judgment against Defendants Hilltop, SCME, and Santiago. (hereafter, "Hilltop Motion," Docket Item No. 36; "SCME Motion," Docket Item No. 37; and "Santiago Motion," Docket Item No. 38.) The Court conducted a hearing on June 16, 2008. Based on the papers submitted to date and oral argument, the Court GRANTS Plaintiff's Motions for Default Judgment against Defendants Hilltop and SCME, and Santiago.

## II.  BACKGROUND

**A.    Factual Allegations**

In a Complaint filed on September 11, 2007, Plaintiff alleges as follows:

Plaintiff is a naturalized citizen of Mexican origin residing in Sunnyvale, California. (Complaint for Violation ¶ 5, hereafter, "Complaint," Docket Item No. 1.) He speaks little English, is illiterate in English, and has difficulty reading his primary language, Spanish. (Id.) Through his employment as a dishwasher, Plaintiff earns approximately $1,600 a month. (Id.) In 1994, Plaintiff and his wife purchased their Sunnyvale home with a mortgage. (Id. ¶ 13.) In 2003, Plaintiff and his wife refinanced their mortgage. (Id.) The new loan interest rate was 5.401 percent with monthly payments of $1,987. (Id.)

In 2005, Plaintiff sought advice from his realtor in an effort to assist his son in purchasing a home. (Id. ¶ 14.) The realtor referred him to Defendant Santiago, a Spanish-speaking employee of Defendant Hilltop, who pressured Plaintiff to refinance. (Id.) Plaintiff informed Defendant Santiago that he would only refinance if he could either maintain or lower his current payment in addition to obtaining money to assist his son. (Id. ¶ 15.) Additionally, Plaintiff emphatically emphasized his desire to have a fixed interest rate. (Id.)

Defendants Santiago and Hilltop induced Plaintiff to refinance by making several oral representations. (Id. ¶ 15.) Defendants represented to Plaintiff that if he refinanced, his payment would be fixed, his monthly payment would stay the same or lower, and no other costs would be incurred beyond an appraisal fee. (Id.) Furthermore, Defendants represented and promised on multiple occasions that the loan would be fixed and have no prepayment penalty. (Id.)

In October 2005, Defendant SCME provided Plaintiff with a copy of a Truth in Lending Statement and a Good Faith Estimate of the new loan. (Id. ¶ 16.) These copies were provided in English only despite Plaintiff's expression to Defendants SCME, Hilltop, and Santiago that he is illiterate in English. (Id.) Further, the documents were inconsistent with Defendants Santiago and Hilltop's representations; the loan, as stated on the documents,

2

included variable payments and a variable interest rate subject to monthly changes. (Id.) More importantly, the new loan was a negative amortization loan, capable of negatively effecting Plaintiff's principle and equity in ways never explained to Plaintiff. (Id.)

On December 14, 2005, Plaintiff signed closing documents for the loan in his home in the presence of a Notary Public and Defendants. (Id. ¶ 17.) The signed documents were only in English and Defendants made no attempt to explain the contents of the documents to Plaintiff. (Id.) Additionally, Defendants used some blank and incomplete documents to forge a statement of income from Plaintiff. (Id.) Plaintiff was not given a copy of any relevant signed documents, and the copies of documents which he was given were exclusively in English. (Id. ¶¶ 17, 18.) Upon his inquiry into whether he needed to consult an attorney, Defendants assured Plaintiff that one was not needed. (Id. ¶ 18.)

Plaintiff closed on the new loan ("Loan") on December 22, 2005. (Id. ¶ 17.) After closing, Plaintiff's request to obtain a complete set of the loan documents, including the Note, all Good Faith Estimates, and loan applications, went unanswered. (Id. ¶ 19.) Plaintiff was also informed and believes that his signature was forged on certain documents, specifically on a Prepayment Penalty Addendum dated December 15, 2005. (Id.) Soon after closing on the loan, SCME sold the loan to Defendant Homecomings. (Id. ¶ 22.)

Defendants' conduct is part of a larger conspiracy of predatory lending directed at low-income Latinos living around Santa Clara county. (Id. ¶ 21.) While Plaintiff's loan is currently in good standing, he is fearful of the threat of default and foreclosure due to the high payments and loss of equity in his home. (Id. ¶ 22.)

On the basis of the allegations outlined above, Plaintiff alleges eleven causes of action: (1) Violation of Fair Housing Act; (2) Violation of Equal Credit Opportunity Act; (3) Violations of Truth In Lending Act and Federal Reserve Regulation Z (codified as 12 C.F.R. § 226); (4) Violation of Unruh Act pursuant to Cal. Civ. Code § 51; (5) Fraud; (6) Violation of Cal. Civ. Code § 1632; (7) Violation of Real Estate Settlement Procedures Act; (8) Violation of Unfair Competition Law

3

pursuant to Cal. Bus. Prof. Code §§ 17200 *et seq.*; (9) Negligent Training; (10) Negligent Supervision; and (11) Rescission and Recessionary Damages.

**B.     Procedural History**

Defendants were served with the Summons and Complaint as follows: Defendant SCME on November 20, 2007; Defendant Hilltop on November 27, 2007; and Defendant Santiago on December 10, 2007. (See Docket Item Nos. 4, 5, 11, 12.) On March 28, 2008, by Stipulation and Order of the Court, Defendant Homecomings was dismissed with prejudice. (See Docket Item No. 28.)

After the requisite time limit for Defendants to file their answers or other motions, Plaintiff filed various motions for entry of default. (See Docket Item Nos. 22-27.) On April 1, 2008, Clerk of Court entered default on Defendants SCME, Hilltop and Santiago. (See Docket Item Nos. 29-31.) To date, Defendants have not answered or otherwise responded to the Complaint.

Presently before the Court are Plaintiff's motion for default judgment as to Defendants Hilltop, SCME, and Santiago.

**III. STANDARDS**

A party may move the court for entry of default judgment. Fed. R. Civ. P. 55(b)(2). The grant of a default judgment is within the discretion of the district court. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). Upon entry of default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true. Gedes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).

In the Ninth Circuit, the district court must consider which of seven factors supports the entry of a default judgment: (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of a dispute concerning material facts; (5) whether the default was due to excusable neglect; (6) the possibility of prejudice to the plaintiff; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

4

## IV. DISCUSSION

The Court first considers whether default judgment is appropriate under Eitel.

### A. Default Judgment

The decision to grant or deny a default judgment under Rule 55(b) is within the discretion of the Court. See Eitel, 782 F.2d at 1471-72. In this case, the Eitel factors weigh in favor of granting default judgment.

First, with respect to his substantive claims, Plaintiff alleges as follows:

> Defendants Hilltop and SCME violated the Real Estate Settlement Procedures Act ("RESPA") by receiving kickbacks for placing an insurance policy on the property under 12 U.S.C. § 2607, and also by failing to provide the disclosures required in an accurate and timely fashion. (Complaint ¶¶ 60, 62.)
> Defendants Hilltop and SCME violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3605 and Cal. Civ. Code § 51 ("Unruh Act") by engaging in a "pattern and practice of predatory lending directed at low-income members of the Latino community in and around Santa Clara County." Defendants prey "on borrowers who, like [Plaintiff], speak Spanish and read little or no English by making loans on terms less favorable than those available to [similarly situated] non-Hispanic customers." (Complaint ¶ 21.)
> Defendants Hilltop and SCME violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 by discriminating against by giving Plaintiff terms and conditions "less favorable than those offered by Defendants to [similarly situated non-Hispanic] borrowers." (Complaint ¶ 31.)
> Defendants Hilltop, SCME, Sotello, and Santiago induced Plaintiff to refinance his loan with Hilltop and SCME by misrepresenting to him, orally and in writing, the terms on which Hilltop and SCME were willing to enter into that transaction. (Id. ¶ 46.)

The Court finds that the factual allegations in Plaintiff's Complaint are sufficiently pleaded to support the merits of Plaintiff's substantive claims.

Second, the sum of money Plaintiff seeks to recover is ascertainable. Third, there is no possibility of a material dispute as to the alleged facts because, upon entry of default, all well-pleaded facts are taken as true. Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Finally, the possibility of excusable neglect is remote because Defendants have been properly served.

Accordingly, the Court finds that a grant of default judgment is appropriate. The Court proceeds to consider the available remedies.

**B.     Damages**

Plaintiff seeks damages in the amount of $270,000 plus interest and costs; he claims $90,000 from each Defendant.  (Hilltop Motion ¶ 5, SCME Motion ¶ 5, Santiago Motion ¶ 5.)

Pursuant to Fed. R. Civ. P. 54(c), "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."  When determining the amount of damages, the "allegations as to the amount . . . are not automatically accepted [by the court.]" Truong Giang Corp. v. Twinstar Tea Corp., No. C 06-03594 JSW, 2007 WL 1545173, at *13 (N.D. Cal. May 29, 2007).  "If . . . it is necessary to take an account or to determine the amount of damages . . . by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ."  Fed. R. Civ. P. 55(b)(2).

In this case, each motion is accompanied by Plaintiff's counsel's affidavit, declaring, *inter alia*, "the claim of the plaintiff is for the sum of $90,000 plus interest from the date of judgment as provided by law, together with costs of this action."  (Affidavit of Attorney Montgomery S. Pisano, in Support for Entry of Default Judgment, Docket Item Nos. 36-38.)  Other than counsel's affidavit, Plaintiff has failed to submit his own declaration or any other evidence sufficient to prove the amount of monetary damages requested.

However, prior the hearing, the Court ordered Plaintiff to appear with all necessary documents as part of a prove-up hearing.  Upon examination of documents presented at the hearing and Plaintiff's testimony, the Court finds that Plaintiff is entitled to $80,000 of damages. Accordingly, the Court GRANTS Plaintiff's motions for default judgment.

## V.  CONCLUSION

The Court GRANTS Plaintiff's Motions for Default Judgment against Defendants SCME Mortgage Bankers, Inc., Hilltop Financial Mortgage, and DeeDee Santiago.  Judgment will be entered in favor of Plaintiff in the amount of $80,000.  No fees or costs are awarded because they were waived at the hearing.

In addition, the Docket reflects that Defendant Sotello has not been served with the Summons and Complaint.  Since the deadline for service of process pursuant to Fed. R. Civ. P. Rule

4(m) has expired, the Court dismisses Defendant Sotello from this action without prejudice to Plaintiff.

Dated:  August 21, 2008

*James Ware*
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Edward Scott Palmer spalmer@pldlawyers.com
Frederick Alan Haist fhaist@pldlawyers.com
Montgomery Scott Pisano mpisano@plg1.com

**Dated: August 21, 2008**                          **Richard W. Wieking, Clerk**

                                                    **By:   /s/ JW Chambers                  **
                                                          **Elizabeth Garcia**
                                                          **Courtroom Deputy**

**United States District Court**
For the Northern District of California